Case No. 24-5143, Bolli et al. Appellants v. Marco Rubio, Secretary, U.S. Department of State, and Kristi Noem, Secretary, U.S. Department of Homeland Security. Mr. Banas, President of the Appellants, Ms. McDade, President of the Bollis. Good morning, Your Honors, and may it please the Court. My name is Brad Banas. I represent the Appellants in this case. The Department of State has required a discreet duty to allocate immigrant visas to noncitizens who have approved EB-5 petitions to prevent wastage and to stop age out for their minor derivatives. The lower court found otherwise, and for that reason, this Court should reverse and remand with further instructions to proceed past the motion to dismiss stage. This case is a straightforward case of statutory interpretation. Does the statute or the regulations impose a required and discreet duty under Norton v. Southern Utah Wildlife Alliance? We would take you straight to the text of 8 U.S.C. 1153 B-5A. That is a mandatory obligation that says visas shall be made available to qualified immigrants seeking to enter the United States for the purpose of engaging in a new commercial enterprise. That is mandatory language, and the only consistent reading of qualified immigrant would be an immigrant who has an approved visa petition. And we see this in the structure of the statute as well. That seems like actually there's a lot of gaps in that argument in the sense that visas shall be made available to qualified immigrants. Could easily read that to say some visas shall be made available to some qualified. There has to be some assignment, not that every qualified immigrant must be assigned a visa. Your Honor, I don't know how a qualified immigrant would not be assigned a visa number. They're qualified. They have been deemed eligible for the benefit. If it just said visas shall be made available to immigrants seeking to enter the United States, that's one thing. But Congress chose to qualify it with the word qualified, and that means something. But you know that there are country caps and visa type caps, and so there are actually every year many, many qualified applicants who don't get visas. Your Honor, those apply to issuance of visas, not allocation. The Department of State has seemingly combined those two steps, and that's why we see thousands of visas go wasted, because now those country caps are dependent upon the conditions in a foreign country where that consulate is. What Congress envisioned was that once they were allocated, it would be an indication that those visas were required, and such that at the annual fiscal year turnover, we would determine how many of those EB-5 visas were not required. The Department of State interprets that to be not issued, and so in our brief, we note 2019 and 2023, I believe, we lost 30,000 EB-5 visas. If they had been allocated… When you say we lost, who's the we? My clients, Your Honor. Well, but the visas are, as you know, there's a system for rolling them over to other categories, other employment categories, family categories, and you're not asserting that nobody is using those visas. It's just that they were not allocated to people in the queue where your clients are waiting. They were lost to the EB-5 category, Your Honor, because they did roll over, but they weren't… You have in your brief, I mean, I can ask the government this, but you have a table showing the number of people, the maximum that would be allowable given the country and EB-5 caps, and then how many were given to EB-5. But isn't one of the issues that the people who are seeking adjustment of status effectively into this employment investor category are counted against the percentage cap and the country cap? So they don't need visas, but they're counted against that. Your Honor, even adjustment of status folks are held to the same line for issuance. And again, I think a lot of your commentary, Your Honor, is based on issuance, not allocation. There are no limits. But the statute doesn't separately talk about allocation. It certainly does, Your Honor. If we look at 1153E, immigrant visas made available under subsection B shall be issued to eligible immigrants. Made available is the same language I just quoted you from 1153B5A. The reason I'm using the word allocation, Your Honor, is that under the regulations they promulgated, instead of using the awkward language of make available or made available, they've used the word allocation. And that's at 22CFR4251B that says Department of State shall allocate visa numbers for use in connection with issuance. So allocation and issuance are two different things. And the consequences of allocation, Your Honor, are significant. One, it does prevent wastage because if it's allocated, there is no argument that it is not required. Because the Department of State has interpreted not required to be not issued, it means this oversubscribed category, because they're not allocating, is losing numbers to other categories, EB1 primarily, despite the fact they're oversubscribed. Those visas are required. The tool that Congress created to notify themselves or Department of State to keep track of that is this allocation. They just don't do it. The other consequence is that the protections against age out for children do not apply until there's an allocation. And so you have – I have clients who have children who are aging out in December, Your Honor. And if they're not allocated, that means when they made the investment in 2016 when their children were true children, they're not going to be able to use the visa because they're over 21, even applying the Child Status Protection Act. So allocation is a key thing here. And I read the government's brief as somewhat of a concession that they just don't do it until the very end when the consular officer looks up a visa number and issues. And I think that structural problem violates the statute, violates their own regulations, and the real-world consequences are for 308 of my clients. Not only are visa numbers being wasted such that their line keeps getting longer despite the fact that it's oversubscribed, but also their children are aging out, and there's no end in sight, especially with the new program that came in 2022 that gives priority to recent visa applicants versus the folks who've been waiting 10 years. This becomes even more important after what's called the Reform and Integrity Act, which has been in play the entire time this case has been in front of the courts. I would just note, Your Honor, that the government spends a lot of time arguing that the right word to be interpreting here is a lot, and that's in 1153B. It's kind of the top-line paragraph. I would suggest that completely is just inapposite, that they don't address the make-available language and that the make-available language is key to the structural argument that 1153E does recognize a two-step process. 1153G requires the Department of State to give notification to folks when it's allocated, and if they don't respond within a year, they're terminated in that. People don't work against your clients in the sense that – so none of your clients has a current priority date. No, Your Honor. So the reason that, as I understand it, the State Department has adopted the priority date system is that in the past, they were processing visa applications from people who had no chance of getting them in the current year or next year or next year because of the over-subscription. So they created the priority date so that they would focus on people from countries and in categories where they had a reasonable chance, a good prospect of getting a visa in the current year. And so your clients are just not even in – even if it wasn't this offsetting from the people on adjustment of status, even if all those visas are allocated, your clients are not going to get a visa in the current year. So it would be a different kind of waste if they were assigned a number and then weren't eligible because the caps prevented them. Wouldn't those visas be more wasted because they wouldn't be rolling over? I think that that is a conflation of issuance versus allocation. I think the department is – my understanding is that they're quite reasonably trying to actually have allocation be closer in time and closer in sort of information availability to issuance precisely so that they don't end up with wastage or misallocation of visas. Again, Your Honor, that's premised on the idea that it has to be issued to be not – or to be required. I would suggest that allocation under the wastage provision, Your Honor, 1153B1A, the language is plus any visas not required. That's not not issued. That's not required. How do we indicate they're required? We allocate them to qualified immigrants. And again, allocation and issuance are two separate things. One is done by the consulate officer abroad. One is done by the NVC at the, quote, department under the regulations or the centralized control. I see I'm way over my time, Your Honor. I'll sit down. Thank you. I have one quick question. Yes, Your Honor. A couple quick questions. And to the extent it's not in the public record, then you can say so. But in the district court, it was unclear whether it's Bo Lee or Lee Bo. Do you know which the right order is? Your Honor, it's Bo Lee. Okay, great. My apologies. And is he living out of the country right now? Yes, Your Honor. All right. Thanks. Thank you, Your Honor. May it please the court. Alexandra McTague for the government. This court should affirm the district court's dismissal of the second amended complaint for failure to state a claim. Counts three and four of that complaint alleged unlawful withholding or unreasonable delay under the APA. But to state such a claim, the plaintiff must identify a discreet action that the agency is legally required to take. And while they've identified a discreet action, the idea that a visa number must be assigned to an approved petition when the State Department receives that petition from USCIS, they haven't shown where that action that they allege is legally required. The appellants have come up with a three-step process. The petition's approved, the visa's allocated, and then the visa issues. But there's no three-step process in the statute. There's no requirement in 1153 to assign a particular visa number to a particular petition. And the reality is that when it comes to visa processing, Congress just did not legislate to that level of detail. And so the issue here is whether this discreet action that they came up with, that a visa number must be assigned to the approved petition before the visa application is adjudicated, is legally required. And the State Department is not legally required to take it. A lot of the issue comes from the use of the word allocation in the briefing and in 1153. And the crux of the dispute really is, does 1153 contain petition-specific allocation, or is it really about divvying up the pool of non-immigrant visas among the different non-immigrant categories? This is a question of statutory interpretation. But where it gets confused is the meaning assigned by both sides. So the appellants say allocation means to assign a specific visa number to a specific petition. Whereas the government says, no, 1153 is not about assigning visa numbers to petitions. It's about the overall pool of worldwide visas and how that's divided among the different non-immigrant classes in that statute. And you can see that from the way the words in the statute are used. So 1153B is employment-based visas. It uses allocation in the title. It uses allot in the introductory paragraph that aliens shall – It says allocation for immigrants, not allocation for visas in the title of 1153B. Right. But if you look at the statutory text, it talks about allocating or allotting visas to aliens who are qualified. And so the title is informative, but it's not going to change the statutory text itself. But when you look at allocation, allot, or make available, all of this is the same in that it's referring back to the worldwide levels in 1151. It's referring back to the overall pool of visas. And it says this when it says make available in a number not to exceed a percentage of the worldwide limits plus any fall-down visas. What's your response to the challenges of – you know, we know that China and now India are oversubscribed, and people in order to even be in the queue have to commit an investment that's tied up for – in the case of these plaintiffs, often many years without even an ability to actually qualify, and the age-out issue for the minor children. What's the State Department's response to those problems? The State Department can't control the number of people who apply and the number of visas that are set by Congress. And all of this really is informed by the statutory limits set by Congress and the amount of demand that is coming from certain countries. And just based on the way the statute is set up and the statutory scheme, this is what Congress has decided. And so it is an unfortunate situation, but it is just the nature of the scheme that Congress created. And so, you know, I want to point out when it comes to the idea of not required visas, the visas that are not required in 1153, those are the fall-down provisions in 1153. So not required visas in any given fiscal year can move to a different category within the same fiscal year, but those are not the visas that roll over at the end of the fiscal year. So 1151 talks about the rollover provisions at the end of the fiscal year. So we're really talking about moving visas around within the fiscal year. If they're not used at the end of the fiscal year, they roll over under 1151 into the next year. What is the relationship between visas and visa numbers? You know, we have the argument from the plaintiffs that the State Department is sort of collapsing them. That is actually my understanding, is that the State Department is assigning the numbers pretty late in the game. Is that right, and is that consistent with the statute? The State Department does assign the numbers late in the game. It pulls a number when it's ready to issue a visa. It is consistent with the statute because what the statute is talking about is making the pool of visas available for use. And so when we're talking about visa numbers versus visas, you know, the language does get a little bit loose, but the reality is that the visa is technically the document that allows someone to present themselves at the border for admission, whereas the visa number is the accounting device that the State Department uses to make sure that it's actually complying with the limits that Congress set. So if it knows it has X number of thousands of visas, then it's going to number those visas in accordance with the number that has been allocated by Congress. So just reading your brief, you talk about visa numbers being available to applicants when their priority date is current, but then that's at 37 of your brief, at 45 of your brief, you say the Department assigns a particular visa number when it issues the visa. And then is it GRU or GRUI, the declaration? I think it's GRU. The government's GRU declaration says an applicant is allotted a visa number after the application is documentarily complete and they have a current priority date. This seems like a little, there's daylight between those different descriptions. What's your most accurate description about when a visa number is actually assigned or allotted? So we're talking about two separate issues. One is the idea of there are visa numbers generally available at the beginning of the fiscal year. And so when you have visa numbers generally available when the fiscal year rolls over, those visa numbers are then used throughout the year as visas are approved. Those numbers are, somebody knows if a visa is potentially available to them based on the visa bulletin. The visa bulletin is the waiting list. Priority date. Right. So it's their priority date if it's oversubscribed. Otherwise, it'll just say current and they can apply. So based on their priority date, they'll know if somewhere in that pool of visas they're eligible. But then they have to be documentarily complete and they have to have an interview. And so there's this process they go through to actually get the visa issuance, which may or may not happen. And USCIS decides whether the petition is, it's not documentarily complete. That's something State Department does later.  So USCIS will evaluate the petition and approve or deny it. Once it's approved, it gets forwarded to the State Department. Then the State Department has this documentarily complete portion of it because they have to run background checks and ask for other forms and things before someone can actually get the interview and the ultimate visa. So an approved petition is, in common sense, Parliament's not really approved. It's not, it's a threshold clearing and pushing along. Well, so it is approved, but the petition and the visa are separate things, right? The petition doesn't grant legal status necessarily, right? The petition is not the visa. It's not what allows you to come into the United States. It's a step in the process. So it doesn't render you eligible for a visa yet. It renders you potentially eligible. Correct. Right. You could have an approved petition and ultimately have your visa denied if, for example, the State Department, if you don't apply for the visa, if you don't turn in all the evidence the State Department requests, if you lie during your interview. I mean, there are any number of ways that ultimately your visa could be denied, even though USCIS approved the petition saying, well, yes, we're looking at what's here, and based on what we see, we're going to approve this. Is there any point at which the allocating of a visa number becomes mandatory? Any point in the process? It depends on what is meant by allocating, I think, and where in the process we're referring to. So I want to be a little bit careful. But so, for example, a visa number will be assigned to a particular petition when they're approving it, right? Because that is how State Department keeps track of how many visas they've used to make sure they don't go over the limits. When approving the visa? Right. So at that point in time, yes, State Department will pull a visa number. They can't approve a visa without a visa number because they have to comply with Congress's limits and all these other restrictions Congress has put. For example, approving them based on the priority dates. So the question I had was, is there ever a point at which the State Department has a mandatory duty to, I don't want to use their word, you can use whatever, to assign a visa number? And your answer is when the visa is issued. At least when the visa is issued. It could do it earlier. But it's not mandatory unless it's controlling the inventory of visas. You can't grant a visa without a visa number. But I take you to be saying that there's not a mandatory time prior to the actual issuance when a visa number has to be assigned to someone who's eligible, who's documentarily complete, who's got a priority date. I just want to understand the State Department's actual practice and its understanding. Yes. No, that is correct. There's no time before that that they have to sign a visa number to the application. Okay. That's my question. Right. And so I guess I was hung up a little bit on the is there a mandatory duty. I mean, this is the process that State Department uses. I'm not sure the statute specifically says the State Department shall assign a visa number at this point in time. It's just this is how they keep track of the overall numbers to comply with the limits. All right. Thank you. Okay. Do we have any rebuttal time? All right. We'll use your time on the direct argument, but you can take a minute or two if you want to for rebuttal. I'll be very brief, Your Honor. The Department of State can't tell you when allocation occurs. That's what I just heard. You asked her, when does allocation occur? And she said, it depends on what you mean by allocation. This is clear. The statute references their own regulations say they shall allocate. It's just not part of the process, and that's harming us. And specifically what we allege in this case is that allocation occurs when the National Visa Center, which is a domestic Department of State office in New Hampshire, they send out a letter to our clients that says, congratulations, we're going to invite you to apply for your immigrant visa. It's a DS-260 is the form number because everything in immigration is forms. That's the moment it's allocated. That's the moment when they should be considered used or required visa, and that's when their children's ages are set. That has not happened for I think 14 people have mooted out of my case, but 290 people, Your Honor, that has not happened for more than a decade, and they are suffering because of it. And the Department of State can't even tell you when they allocate a visa. That at a minimum is a factual question that requires us to go back to the lower court for us to figure out what they actually do. We're relying on a declaration that is untested despite the mandatory obligations in the statute and the regulation. And I would just say this too, Your Honor. Congress did not intend, could not have intended under the rollover provisions that visas for an oversubscribed category somehow are not required. That's the language of the statute. It rolls over if it's not required, yet Department of State is in here saying this oversubscribed category should just be rolling over every year because they fail to issue the visas. That cannot be what Congress required. Congress intended a three-step process. The agency has combined it to two, and my plaintiffs are suffering because of that. Thank you, Your Honors. Thank you. I'm sorry. I had a question for Ms. McTigge that I forgot to ask, which was about the ostensibly wasted visas. There's a, you know, once the country cap and the EB-5 percentage caps are applied, there's a number calculated that are theoretically available. And there's a table in the plaintiff's brief that says the State Department has actually used a much smaller number for the past, whatever, five, seven years of the EB-5 visas. Can you explain why that is? Am I right in assuming that part of that is that it's taken up through adjustment of status? Is there some other answer? Some of it is adjustment of status, I think. I will say, Your Honor, that if you look at that table, the majority of the unused visas were during COVID, which was just an unprecedented time. So I think COVID really explains the processing delays for the majority of those visas. And I believe we say in our brief that in 2023 the State Department was using all of the visas for EB-5 in that particular year. The reality is that this is a process that is constantly moving, and they're constantly getting information from the posts around the world, from the adjustment of status in the United States. There's a limit in the number of people who can come in. And so every year they are trying to hit the limits with, again, the exception of COVID. So in there they have a 2023 line on page 4 of their brief that says annual allocation 7,703, but EB-5s issued 5,685. And they call the 2018 difference a lost. And I'm just – you don't have any information whether those are going counted as against these caps, but they are obtained through adjustment of status where people already have visas? Or is somebody who's adjusting status, are they also using a visa? They're also using a visa. So they all – adjustment of status comes from the same pool of numbers, but they don't have a visa. They don't get a visa? Right, because – If they're finishing up on a student visa and wanting to have an EB-5 investor status to stay, wouldn't they need a visa? Student visas are – Or whatever. A little bit, yeah. A highly skilled worker visa or something like that. I mean, they have status. The visa allows them to come in and out of the United States, right? So you don't really have information on these? I don't. I'm sorry, Your Honor. But, again, I mean, everything rolls over the following year. It's not like the visas just poof, disappear. But, again, the majority of those numbers happen during COVID. And in 2023, I do believe that the State Department used all or virtually all of the EB-5 visas. So this is just a wrong chart here? I don't know where the chart came from.  Thank you. Thank you, Your Honor. Case is submitted.
judges: Pillard; Walker; Ginsburg